<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ALEXANDER A. HARRIS,<br><br>      Plaintiff,<br><br>      v.<br><br>MICHAEL DANITCO, *et al.*,<br><br>      Defendants. | Case No. 2:24-cv-01121 (BRM) (CF)<br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is *pro se* Plaintiff Alexander A. Harris' ("Plaintiff") civil rights complaint ("Complaint"), filed pursuant to 42 U.S.C. § 1983.[1] (ECF No. 1.) The Court previously granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 4.)

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below and for good cause having been shown, Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**.

---

[1] Attached to the Complaint is a list of numerous names and signatures, which the Court previously construed as a list of the names of additional plaintiffs. (*See* ECF No. 1 at 7; *see also* ECF No. 4 at 1.) On November 4, 2024, the Court granted Plaintiff's application to proceed *in forma pauperis* ("IFP"). (ECF No. 4.) At that point, the Court provided the additional plaintiffs forty-five days to each submit individual IFP applications, or, in the alternative, collectively pay the $405 filing fee. (*Id.* at 4.) The additional plaintiffs were advised "should they fail to pay the fee or submit IFP applications within the time allotted by the Court, the Court will screen the complaint as only to Plaintiff Alexander A. Harris." (*Id.*) The additional plaintiffs failed to comply with the Court's November 4, 2024 Order. As such, the Court considers Plaintiff's Complaint (ECF No. 1) as brought only by Plaintiff Harris.

## I.    BACKGROUND

The Court will construe the allegations in the Complaint as true for the purposes of this Opinion. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Plaintiff is a pretrial detainee[2] confined at Hudson County Correctional Center ("HCCC"). (*See generally* ECF No. 1.) Plaintiff brings this civil rights action, pursuant to 24 U.S.C. § 1983, against (1) Medical Director Michael Dantico ("Dantico"), (2) Director of Nurses Maxene Lnu ("Lnu"), (3) HCCC Director Becky Scott ("Scott"), (4) HCCC Deputy Director Sharonda Murrell ("Murrell"), and (5) Dr. Ibrahim ("Ibrahim"). (*Id.* at 1.)

In the Complaint, Plaintiff claims he was housed with another inmate who allegedly had a staph infection "from maybe [A]ugust or September," and the inmate always wore a bandage on his hand. (*Id.* at 10.) Plaintiff touched objects including "[d]irty sheets and blankets, . . . [t]rays, . . . brooms, chairs, microwave, . . . medication . . . , tablets, kiosk, tables, phones, etc" before he was informed of the fellow inmate's infection. (*Id.*) Plaintiff submits he had "sores on nose." (*Id.*) Plaintiff alleges due to his high blood pressure and abnormal EKG's, he is at higher risk of Endocarditis. (*Id.* at 11.)

Plaintiff was not made aware of the fellow inmate's staph infection until November 14, 2023. (*Id.* at 13.) On the same day, Petitioner saw Doctor Fidela with complaints of "infections[] in the ear[] and nose." (*Id.* at 19.) After completing a round of antibiotics, Plaintiff noticed he had a sore in his throat on November 24, 2023. (*Id.*) Plaintiff alleges several other inmates then became ill, and all received antibiotics before Plaintiff. (*Id.*)

The Complaint further submits Plaintiff then complained to Defendant Lnu and Defendant Ibrahim regarding the potential exposure to staph disease on November 27 and 28, 2023. (*Id.* at

---

[2] The Complaint submits Plaintiff was convicted by not sentenced. (ECF No. 1 at 2.)

13.) At some point, the inmate with the alleged staph infection was sent on a "clinic trip," and when he returned, he claimed the doctors "said it was gone." (*Id.*)

On December 6, 2023, Plaintiff was informed he was "positive for staph infection." (*Id.*) Plaintiff claims Defendant Ibrahim minimized the situation by telling Plaintiff all bodies have staph. (*Id.*) Plaintiff alleges he asked to be "re-tested" to ensure the "prescription cleared the virus," however, as of December 18, 2023, he had not been retested. (*Id.* at 15.) Plaintiff claims he was informed by "Doctor or Nurse Fidela" that he has "an enlarged heart," or Endocarditis, and he was never told that before. (*Id.* at 16.) Plaintiff alleges an enlarged heart is consistent with "staph disease." (*Id.*)

In the Complaint, Plaintiff alleges there were "no measures employed to alleviate the risk of infection from [the fellow inmate], . . . protocols for handling inmates with staph infections or other infectious diseases, or efforts made . . . to ensure the staph bacteria was not spread." (*Id.* at 11.) Plaintiff claims he wrote to "medical" about his concerns and spoke to Defendant Ibrahim. (*Id.* at 15.) Defendant Ibrahim instructed Plaintiff to "write on the kiosk." (*Id.*)

Plaintiff alleges Defendants Ibrahim, Lnu, and Dantico knew of the serious risk to inmates' health and took no actions to alleviate said risk. (*Id.* at 16.) Plaintiff states Defendants Scott and Marrell took no steps to combat the spread of this infectious disease. (*Id.*)

Plaintiff seeks monetary and declarative relief. (*Id.* at 6–7.)

## II.    LEGAL STANDARD

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim

with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts *to sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who is proceeding as indigent.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "[a] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### A. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Therefore, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DECISION

### A. Failure to State a Claim

#### 1. Defendants Dantico, Lnu, Scott, and Marrell - Supervisory Liability

The Complaint alleges Defendants Lnu and Dantico knew of the serious risk to inmates' health and took no actions to alleviate said risk. (ECF No. 1 at 16.) Plaintiff claims Defendants Scott and Marrell took no steps to combat the spread of this infectious disease. (*Id.*) Finally, Plaintiff claims in late November he informed Defendant Lnu about his potential exposure to staph disease. (*Id.* at 13.) The Court construes the Complaint as raising Fourteenth Amendment deliberate indifference claims against Defendants Dantico and Lnu, as the supervisors in the medical department, and Defendants Scott and Marrell, as administrators at HCCC, under a theory of supervisory liability.

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Due process or Eighth Amendment standards may be violated when a pretrial detainee is subjected to punishment unrelated to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511

U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). A "failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without due process of law." *Roman v. DeMarco*, Civ. A. No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

A plaintiff may establish supervisory liability under § 1983 by showing: (1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation; or (2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Doe v. N.J. Dep't of Corr.*, Civ. A. No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1987).

"Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990). In other words, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207.

"[T]o hold a supervisor liable . . . [for their deficient policy or practice] . . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to

6

that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Plaintiff appears to allege Defendants Dantico and Lnu, as the supervisors in the medical department, and Defendants Scott and Marrell, as administrators at HCCC, failed to protect him from the risk of contracting a staph infection. (*See generally* ECF No. 1.) However, in the Complaint, Plaintiff does not identify any specific policy or policies that Defendants Dantico, Lnu, Scott, and Marrell failed to employ. Plaintiff's Complaint does not address what policies were in place to prevent the spread of an infectious disease or how these policies were deficient.

Additionally, the Complaint fails to allege facts against these Defendants that would show their personal involvement in the alleged risk to Plaintiff's health. Plaintiff makes only a conclusory allegation that Defendants Lnu and Dantico knew of the serious risk to inmates' health and took no actions to alleviate said risk, and that Defendants Scott and Marrell took no steps to combat the spread of this infectious disease. (*Id.*) Aside from these conclusory allegations, the Complaint is devoid of factual allegations against these Defendants.

Here, Plaintiff fails to state a plausible Fourteenth Amendment claim for relief against Defendants Dantico, Lnu, Scott, and Marrell as supervisors. Plaintiff fails to allege facts showing the alleged conditions at HCCC were the result of a policy or procedure. Plaintiff also fails to allege facts that would show these Defendants personally participated in Plaintiff's conditions of confinement, directed prison staff's actions, or had contemporaneous knowledge of the facts alleged. In short, Plaintiff does not allege sufficient facts to allow this claim to proceed, and his Complaint against Defendants Dantico, Lnu, Scott, and Marrell is dismissed without prejudice. *See Iqbal*, 556 U.S. at 678.

7

### 2.  Defendant Dr. Ibrahim - Fourteenth Amendment Deliberate Indifference to Adequate Medical Care

The Court liberally construes the Complaint as raising Fourteenth Amendment deliberate indifference to Plaintiff's medical needs claims against Defendant Dr. Ibrahim. (*See* ECF No. 1.)

The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care. *Bocchino v. City of Atl. City*, 179 F. Supp. 3d 387, 403 (D.N.J. 2016). To state such a claim, a pretrial detainee must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate his medical needs are serious. Serious medical needs include those that have been diagnosed by a physician as requiring treatment or are so obvious a lay person would recognize the necessity for a doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss. *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

The second element of the *Estelle* test requires an inmate to show prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer*, 511 U.S. at 837–38. A plaintiff alleges deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotations and citations omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06; *White*, 897 F.2d at 110.

Here, Plaintiff fails to allege facts to state a claim that Defendant Ibrahim was deliberately indifferent to Plaintiff's medical needs. Considering the first prong of the *Estelle* inquiry, Plaintiff pleads facts that he has a serious medical need, *i.e.*, high blood pressure and abnormal EKG's, which put him at higher risk for Endocarditis. (ECF No. 1 at 11.) Plaintiff fails to plead facts to meet the second prong of *Estelle*, as Plaintiff fails to show Defendant Ibrahim was deliberately indifferent to those needs. Plaintiff claims he informed Defendant Ibrahim regarding his potential exposure to staph on November 27 or 28, 2023. (*Id.* at 13.) Plaintiff submits he was given an antibiotic. (*Id.*) The Complaint is devoid of facts to show Defendant Ibrahim knew Plaintiff needed medical treatment and intentionally refused said treatment or delayed Plaintiff's treatment for a non-medical reason. *Rouse*, 182 F.3d at 197. As such, any Fourteenth Amendment failure to provide adequate medical care claim against Defendant Ibrahim is dismissed without prejudice for failure to state a claim for relief under § 1915A(b)(1).

### 3. Fourteenth Amendment Deliberate Indifference to Conditions of Confinement

Finally, the Court construes the Complaint as raising a Fourteenth Amendment Conditions of Confinement claim. Plaintiff appears to allege members of the prison staff were deliberately indifferent to the risk to his safety based on his potential exposure to a potential staph infection.

"The Constitution mandates that prison officials satisfy inmates' 'basic human needs— e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Duran v. Merline*, 923 F. Supp. 2d 702, 719 (D.N.J. 2013) (quoting *Helling v. McKinney,* 509 U.S. 25, 32 (1993)). A plaintiff must allege the defendant knew of and disregarded an excessive risk to the plaintiff's health. *See Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (citing *Farmer*, 511 U.S. at 837).

Plaintiff alleges the infected inmate was left on the unit with an infectious disease without the other inmates being informed. (ECF No. 1 at 20.) In the Complaint, Plaintiff claims an inmate with an infectious disease must be isolated from the general prison population. (*Id.*) Although Plaintiff is arguing individuals were deliberately indifferent to the excessive risk to Plaintiff's health this created, Plaintiff fails to connect this claim to a particular defendant. The Complaint fails to allege facts showing any named Defendant had personal knowledge of the inmate's staph infection prior to Plaintiff notifying them, nor does the Complaint allege any of these Defendants permitted that inmate to remain on the unit. The Complaint fails to plead facts to show any of the named Defendants were aware of the risk to Plaintiff's health. As such, any Fourteenth Amendment conditions claim against the named Defendants is dismissed without prejudice for failure to state a claim.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE**. The Court shall give Plaintiff thirty days from the date of the accompanying Order to file an amended complaint to cure the deficiencies discussed in this Opinion. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: March 19, 2026